THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK RIMIERI, Appellant.

1. MURDER — SUFFICIENCY OF EVIDENCE. The evidence upon the trial of an indictment for homicide reviewed and held sufficient to sustain a verdict convicting the defendant of the crime of murder in the first degree.

2. SAME — INSUFFICIENCY OF ALLEGED ERRORS. Alleged errors in rulings in the admission and·exclusion of evidence and in instructions to the jury examined and found to be insufficient to justify a reversal of the judgment of conviction.

(Argued November 17, 1904; decided December 30, 1904.)

APPEAL from a judgment of the Kings County Court, rendered January 7, 1904, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, as far as material, are stated in the opinion.

*Martin T. Manton* for appellant. The verdict was against the evidence, and justice requires that a new trial be granted. (*People* v. *Barberi*, 149 N. Y. 256; *People* v. *Beckwith*, 103 N. Y. 360; *People* v. *Conroy*, 97 N. Y. 62.) There is not evidence to support a verdict of murder in the first degree. There is a want of premeditation, deliberation and an intent to kill. (*People* v. *Barberi*, 149 N. Y. 256; *People* v. *Majone*, 91 N. Y. 212; *People* v. *Kennedy*, 159 N. Y. 348; *Shufflin* v. *State*, 62 N. Y. 229.) The trial court erred in the admission of evidence as to the number of children that the deceased left behind, and also as to the admission in evidence of a two-year-old child of the deceased, and evidence as to his wife now being pregnant. (*Ruloff* v.

*People,* 45 N. Y. 213 ; *Yates* v. *People,* 38 Ill. 531 ; *Jim* v. *State,* 4 Humph. 290 ; *State* v. *Standers,* 68 Mo. 204 ; *Under-hill* v. *Waite,* 9 N. Y. Wkly. Dig. 438 ; *Hatfield* v. *S. P. & D. R. Co.,* 33 Minn. 130 ; *United States* v. *Reed,* 42 Fed. Rep. 134; *People* v. *Montgomery,* 176 N. Y. 219.) The court committed grave and prejudicial error in the admission of evidence of an assault by the defendant upon the deceased at a time prior to the date of this tragedy. (*People* v. *Corey,* 148 N. Y. 476; *People* v. *Driscoll,* 107 N. Y. 414; Code Crim. Pro. § 528; *People* v. *Sharp,* 107 N. Y. 471 ; *People* v. *Flannigan,* 42 App. Div. 319 ; *People* v. *Romano,* 84 App. Div. 318 ; Underhill's Crim. Ev. § 88 ; *People* v. *Shea,* 147 N. Y. 78 ; *Coleman* v. *People,* 55 N. Y. 81.) Evidence of statements by Pinto and exhibitions of Pinto's wounds in the absence of the defendant, as to a prior assault committed by the defendant on the deceased, was inadmissible and should have been excluded. (*People* v. *Maine,* 156 N. Y. 50 ; 1 Greenl. on Ev. 102 ; *People* v. *Corey,* 148 N. Y. 478; *People* v. *Strait,* 148 N. Y. 566; *People* v. *Koerner,* 154 N. Y. 355 ; *People* v. *Helmer,* 154 N. Y. 596.) The court committed grave and prejudicial error in the admission and exclusion of other testimony. (*Kenner* v. *State,* 18 Ga. 194 ; *Prichette* v. *State,* 22 Ala. 39 ; *Monroe* v. *State,* 5 Ga. 85; *Campbell* v. *People,* 16 Ill. 17; *Jewett* v. *Banning,* 21 N. Y. 27 ; *Stokes* v. *People,* 53 N. Y. 164 ; *People* v. *Taylor,* 177 N. Y. 237.) Remarks of the district attorney in his summing up and in the trial, as sanctioned by the trial court, constituted grave and prejudicial error. (*People* v. *Quick,* 58 Mich. 321 ; *Martin* v. *State,* 66 Misc. Rep. 505 ; *People* v. *Hess,* 85 Mich. 128 ; *People* v. *Fielding,* 158 N. Y. 542 ; *People* v. *Greenwall,* 115 N. Y. 520 ; *People* v. *Brooks,* 131 N. Y. 321 ; *People* v. *Smith,* 55 App. Div. 368 ; *People* v. *Mitchel,* 62 Cal. 411 ; *Cross* v. *State,* 68 Ala. 476 ; *Ferguson* v. *State,* 49 Ind. 33 ; *Green* v. *State,* 17 Tex. App. 395.) The court's general attitude throughout the trial, particularly by the biased tenor of its charge, entitles this appellant to a reversal.

(*People* v. *Tuczkewitz*, 149 N. Y. 240; *People* v. *Barberi*, 149 N. Y. 256; *Allison* v. *U. S.*, 160 U. S. 203; *People* v. *Barone*, 161 N. Y. 451; *People* v. *Speski*, 57 App. Div. 91.)

*John F. Clarke, District Attorney* (*Robert H. Elder* of counsel), for respondent. Proof by the People of the prior assault by the defendant upon the deceased a few days before the killing was proper, because it threw light on motive, and because it also tended to show that the defendant was the aggressor. (*People* v. *Harris*, 136 N. Y. 449; *People* v. *Kemmler*, 119 N. Y. 584; *Commonwealth* v. *Bradford*, 126 Mass. 44; *Brown* v. *State*, 26 Ohio St. 181.)

WERNER, J. This is an appeal from a judgment of conviction of the crime of murder in the first degree. The defendant assails the judgment on various grounds, several of which relate to the probative weight and effect of the evidence presented on behalf of the prosecution, so that a brief outline of the facts is necessary.

The substance of the specification in the indictment is, that in the borough of Brooklyn, New York, on the 1st day of October, 1903, the defendant shot and killed one Jacko Pinto, with the deliberate and premeditated design to effect his death. The shooting by the defendant, and Pinto's subsequent death in consequence thereof, are facts as to which there is no issue, for they were established by uncontroverted evidence as well as by the admissions of the defendant. The latter claimed, however, that he acted in self-defense, and upon that branch of the case the evidence was conflicting. The defendant and Pinto were both Italians and junk dealers, living within a few doors of each other on Frost street, in the borough of Brooklyn. Several days before the homicide, Pinto and the defendant had an altercation over some old bottles, in the course of which the former struck and wounded the latter. The theory of the prosecution was that the defendant, smarting under the indignity and injury thus inflicted upon him, armed himself, lay in wait for Pinto, and fired the fatal shot when

the latter came within range. In support of this theory evidence was adduced tending to show that on the evening of the homicide, Pinto and his wife and child were going from his place of business to his home which was on the opposite side of the same street. The wife and child were several paces in advance of Pinto when the defendant came out from an area adjoining the house where he lived, drew a revolver and fired. Pinto sank to the ground and the defendant fled. The latter, after running a short distance, was captured and placed under arrest. The revolver with which the deed was committed, with one chamber emptied, was found in his possession, together with a knife or dagger. While the eyewitnesses to the affair, sworn for the prosecution, differed as to some of the details, they all testified in substance that the defendant was the aggressor and that Pinto was not armed. The story, as told by the defendant and his witnesses, tended to show that Pinto was armed with an axe with which he pursued and threatened to attack the defendant, and that the latter did not shoot until he was in danger of bodily injury. The defendant sought to account for his being armed by explaining that after the altercation with Pinto several days before that, he was in fear of his life and procured for his defense the weapons found upon his person when arrested.

The issue of fact created by these differing narrations of the homicide was submitted to the jury under a very careful and impartial charge and the result, as already stated, was a verdict of murder in the first degree. After a searching examination of the record we are convinced that it is beyond our province to interfere with this verdict, either on the ground that it is not supported by the evidence, or that it is against the weight of evidence. There is evidence which warranted the jury in finding that the shooting of Pinto by the defendant was willful, deliberate and premeditated, and, as all the other facts of the homicide are beyond dispute, we cannot disturb the judgment pronounced upon the defendant, unless one or more of the alleged errors in rulings assigned by the defendant are of sufficient gravity to justify such action.

When Mrs. Pinto, the widow of the murdered man, was on the witness stand, she was asked by the district attorney if she had any children and she answered in the affirmative. She was then asked how many, and she answered, "I have one child and I am now pregnant." The record discloses that there was an "objection as immaterial," and the court ruled that the evidence should be allowed to stand. Subsequently, and just before the case of the prosecution was rested, the district attorney recalled Mrs. Pinto, who had brought her child into court, and the latter was offered and received in evidence without objection. The defendant now relies upon these incidents of the trial as sufficient grounds for reversal of the judgment. Referring to the testimony of Mrs. Pinto as to her pregnancy, it is enough to say that it was not called for in the question of the district attorney, and while the court might with propriety have stricken it from the record, it was entirely harmless, and could not by any possibility have been prejudicial to the defendant. The introduction in evidence of the living child was an unusual and an unnecessary thing, the only justification for which rests in the district attorney's claim that the cross-examination of the witnesses for the prosecution indicated that the defense would deny the presence of the child at the homicide and, since it was probable that there would be some conflict of testimony as to whether Pinto crossed the street in pursuit of the child, which had escaped from the custody of the mother, or whether Pinto belligerently went in search of the defendant, it was proper to fortify the evidence of the prosecution by showing, not only that there was a child, but that it was of such tender age that its attempt to cross the street would arouse the anxiety of the parents and cause them to follow it. The contention of the district attorney in this behalf is not without support in the record, but still we do not perceive the necessity for introducing the child in evidence. But, when the whole episode is sifted, the question still remains, how could it possibly have harmed the defendant? To hold that a jury, sitting in judgment in a case involving a human life, could be influenced

by such an incident, to render a verdict not warranted by the evidence, would be an unjust imputation upon a system that, with all its faults, has never been open to the criticism of undue severity.

It appeared from the evidence adduced on behalf of the prosecution, that in the altercation between the defendant and Pinto, which occurred several days before the homicide, the latter sustained a scalp wound. Pinto's wife was a witness to the altercation and saw the wound. Upon the trial she gave her version of the affair, which was competent upon the question of motive and, in that connection, she stated that her husband went to Saint Catharine's Hospital to have the wound sewed up. Another witness named Mazzini saw the wound during the interval between the altercation and the homicide. A policeman named Snow, who was in charge of the neighboring precinct station on the evening of the altercation, testified that a man who gave his name as Pinto called at the station and exhibited a scalp wound and that he sent Pinto to the hospital to have the wound attended to. McCauley, another policeman, testified to taking Pinto to the hospital in a patrol wagon. Upon the cross-examination of these witnesses, defendant's counsel elicited statements as to what Pinto had said about his wound and the circumstances under which it was inflicted. While evidence of this character would have been incompetent if called for by the district attorney and objected to by the defendant's counsel, it cannot successfully be assigned as error when adduced on behalf of the defendant.

Upon the cross-examination of Mrs. Pinto she stated that she had previously testified at the city hall. Defendant's counsel asked her, "When were you examined?" An objection was interposed by the district attorney, and then a colloquy ensued between counsel and court, from which it appears that the district attorney claimed the witness had not been sworn at the coroner's inquest, and, therefore, the inquiry was immaterial. Subsequently the witness did state, without objection, that she had testified before the grand jury,

but defendant's counsel did not further pursue the subject and it was dropped. A somewhat similar situation was presented when the witness Spinelli, upon cross-examination by defendant's counsel, was asked the question, "You were not a witness before the Coroner's inquest, were you?" The objection of the district attorney was sustained, the court stating, in substance, that if the witness had testified at the inquest, defendant's counsel had a copy of the testimony and could interrogate her as to any discrepancies between her testimony given at the trial and that given at the inquest. We find no error in these rulings. Defendant's counsel did not attempt to prove, and was not prevented from proving, any statement made by either of these witnesses at the coroner's inquest or before the grand jury; on the contrary, that is precisely what the court said the defendant's counsel might do, if done in the regular way.

Defendant complains because he was not permitted to testify to his state of mind while engaged in the altercation with Pinto which occurred several days before the homicide. After having testified to certain facts, he proceeded to state what he thought, when he was interrupted by an objection from the district attorney, who insisted that the defendant should confine himself to what was said and done on that occasion. Thereupon the court directed that the testimony as to what the witness thought should be stricken out. Very soon thereafter the same question arose again and then the court stated "in order that he may have every opportunity I will allow it," and the witness proceeded to give his narration of the facts, as well as the operations of his mind. After having testified at length as to Pinto's alleged attack upon him, defendant stated that one Bruno had told him what Pinto had threatened to do to him. Defendant's counsel then asked him, "What did he (Bruno) say to you that Pinto had said about what he was going to do to you?" At this juncture the district attorney appealed to the court for instructions, stating that as he understood the rule evidence of threats actually made would be competent, but that Bruno's statement to the defendant did

not seem to come within the rule. To this the court replied, "I think the defense should first prove that the threat was made, but I will allow it so that this man can have everything that is coming to him and even more, but I have very grave doubts about its relevancy at this time." Thereupon the defendant testified to the threats communicated to him by Bruno and claimed to have been made by Pinto. We are at a loss to know wherein there was any error in these rulings, unless it consisted in the extreme leniency of the court toward the defendant. The criticism that the court, in expressing doubt as to the relevancy of the evidence of the alleged threats, intimated to the jury that it was not worthy of serious consideration, seems to be utterly without foundation.

The court, at the conclusion of the charge, suggested that if the jury desired any of the exhibits they could take them if there were no objections. A juror asked for the diagram and photographs. The court asked if there was any objection, and, according to the record, defendant's counsel replied, "No objection." Then the district attorney suggested that perhaps the jury would like to take the other exhibits. Again the court asked if there was any objection, and again defendant's counsel is recorded as saying, "No objection." Thereupon the jury took all the exhibits, including the pistol and dagger above referred to. Defendant's counsel insisted upon the motion in arrest of judgment and for a new trial, and he now insists, that he did object to giving the exhibits to the jury, but the record is against him, and that must be our guide in disposing of the question.

The defendant further contends that the attitude of the court throughout the trial was unfair to the defendant; that the charge to the jury was biased; that the district attorney was permitted to indulge in statements prejudicial to the defendant that were not supported by evidence, and that numerous erroneous rulings were made in addition to those specifically discussed. We have carefully examined the record with reference to each of these contentions and we are convinced that they are not well founded. The trial court

was not only fair but extremely liberal to the defendant in all its rulings, and the charge was as favorable to him as the evidence would permit. When the jury, after having retired, came into court for further instructions as to the several degrees of homicide, and the defendant's counsel had been refused permission to prefer further requests to charge, the court again sent for the jury and stated, " I have sent for you, gentlemen, in order that no injustice may be done to the defendant in any manner, shape or form. The court has sent for you to listen to any requests the counsel for the defense may wish to make." Counsel for the 'defense then requested the court to read again the law with reference to justifiable homicide. The court complied with the request and then added, " if you find from the evidence in this case that the defendant intended to kill Pinto, you cannot find him guilty of either manslaughter in the first or second degree." Defendant's counsel took an exception to this part of the charge, but we think it is unavailing because the charge correctly stated the law.

We think the defendant had a fair trial and that no errors have been pointed out that would warrant a reversal of the judgment. The judgment of the court below should, therefore, be affirmed.

CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT and VANN, JJ., concur.

Judgment of conviction affirmed.